**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL R. PHELPS,

      Plaintiff,

v.                                    Case No. 8:08-CV-971-T-30TGW

TRAVIS FORRISTER, et al.,

      Defendants.

_____/

## <u>ORDER</u>

THIS cause comes before the Court on a civil rights complaint (hereinafter "complaint") initiated by *pro se* Plaintiff, Michael R. Phelps, a prisoner incarcerated at Jefferson Correctional Institution, Monticello, Florida, pursuant to 42 U.S.C. § 1983 (Dkt. 1). Plaintiff's request to proceed *in forma pauperis* was granted (Dkt. 4). The matter is now before the Court for an initial screening.

Plaintiff's complaint relates to events which allegedly occurred on June 11, 2006, in Sarasota, Florida. Plaintiff names the Sarasota Police Department, and Officer Travis Forrister, Officer Dwanye Shellhammer, Lieutenant Norman Stockton, and two John Doe officers, all of whom are employed by the Sarasota Police Department, as defendants in this action.

## Standard of Review

Because Plaintiff filed this action against a governmental entity and employees of a governmental entity while incarcerated, the Court is required to screen his action under 28 U.S.C. § 1915A(b).  Section 1915A provides that:

> "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. . . .  On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint – is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief."

28 U.S.C. § 1915A(a) and (b)(1) & (2).  Section 1915A requires that prisoner complaints be screened in the same manner as under § 1915(e)(2)(B) where a governmental official has been sued regardless of whether the $350.00 filing fee has been paid.  *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding that § 1915A "applies to any suit by a prisoner against certain government officials or entities regardless of whether that prisoner is or is not proceeding IFP."), *cert. denied*, 527 U.S. 1041 (1999). The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii).").  A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955, 1964-65 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). *See Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187-88 (11th Cir. 2002) (stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming district court's dismissal of § 1983 complaint because plaintiffs' factual allegations were insufficient to support alleged constitutional violation).

Pleadings drafted by laymen are to be interpreted by application of less rigid standards than those applied to formal documents prepared by lawyers. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (holding that "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys"). A plaintiff is not required to prove his claim in his complaint, but he must allege sufficient facts in the complaint which, when viewed in the light most favorable to plaintiff, support the conclusion that he may be

able to establish that he is entitled to the relief he seeks under § 1983.

## Plaintiff's Allegations

In his complaint, Plaintiff alleges that on June 11, 2006, at approximately 12:10 a.m., he was riding his bicycle on 29th Street in Sarasota, Florida.  As he was riding, he heard a vehicle approaching behind him and saw the vehicle's headlights coming closer to him.  He then heard somebody shout "what do we have here?"  Plaintiff turned his head to look at who had made the statement, and he saw a police officer, Defendant Forrister, in the passenger side of a police car with the passenger door half-way open.  The police car then moved faster and swerved in an effort to pull up close to Plaintiff.

Plaintiff then stopped his bicycle, and he got off his bicycle and stood in the grass on the side of the road.  The police car pulled up next to him and stopped.  Plaintiff saw the two officers (Defendants Forrister and Shellhammer) smiling and giggling in the police car. Plaintiff asked Defendant Forrister "man, what's up?"  Officer Forrister asked Plaintiff, "what's wrong with your light?"  Plaintiff answered "Nothing.  As I was making that rough stop just now the switch was knocked to medium because it's a little loose.  I just got [the bicycle] back after it was missing for a few weeks."  Plaintiff then told the officers where he was going, and he offered his State of Florida Identification Card to them.  The officers did not respond to Plaintiff, but instead quietly spoke to each other as they sat in the police car.

Plaintiff then saw Defendant Forrister nod his head as if he was in agreement with something Defendant Shellhammer had said to him.  The officers then began to slowly drive away.  The police car moved forward about twelve feet when Plaintiff saw it suddenly stop,

and then Officer Forrister leaped out of the car. Plaintiff was afraid, and therefore he started to run away, and he ran into the back yard of a residence. Officer Forrister ran after Plaintiff and shouted "boy, you ain't going to get away from me, I'm gonna catch your ass!" Plaintiff thought about surrendering, but he did not trust the officers so he attempted to climb over a fence. As he was climbing the fence, he heard "a clash of metal strike the fence" and he felt a violent convulsion under his hands and feet which caused him to lose his balance and fall off the fence on to the ground. He heard his right elbow crack.

Plaintiff stood up from the ground, and he heard Officer Forrister yell "I knew that I could get your ass!" Plaintiff shouted "Hey! I think my arm is broke [sic]!" Plaintiff then heard a pop and felt something hard penetrate his lower back. Officer Forrister had shot him with a tazer gun. Officer Forrister realized that Plaintiff was not being shocked by the tazer gun, and Plaintiff saw Officer Forrister repeatedly squeeze the trigger on the tazer gun and sparks flying from the gun.

Officer Shellhammer then arrived, and he heard Plaintiff tell him that his arm was injured. Officer Shellhammer then told Officer Forrister "hey, there is something wrong with his arm." Plaintiff then fell to the ground because of the pain from his arm and the tazer wounds.

An ambulance arrived. Officer Forrister was in the ambulance with Plaintiff, and Plaintiff told him that he was 32 years old. Officer Forrister told Plaintiff that he thought Plaintiff was younger than that, and that "[he] did what [he] did" because he thought Plaintiff was "some young guy up to no good." Plaintiff and Officer Forrister then came to an

agreement that because Officer Forrister made "the wrong decision" that he would ask his Sergeant if they could take Plaintiff to the hospital instead of taking him directly to jail.

Plaintiff was taken to Sarasota Memorial Hospital.  While at the hospital, Officer Forrister told Plaintiff that his superior officers told him that he had to give Plaintiff a court date for obstruction of justice, and a traffic citation, or else they would take Plaintiff to jail after the medical personnel had finished treating him.  Plaintiff decided to accept the court date and traffic citation so that the officers would leave him alone and stop harassing him.

Finally, Plaintiff alleges that the June 11, 2006 use of force report mentioned that a tazer gun was exhibited, but did not mention that it was discharged.

For relief, Plaintiff seeks punitive damages from all defendants.

## Discussion

### 1. Claims against Sarasota Police Department

Plaintiff fails to state a claim upon which relief may be granted against the Sarasota Police Department.  Initially, the Sarasota Police Department is not a proper party to this suit. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  In Florida, in these circumstances, the city or municipal corporation is the proper party. *See Mann v. Hillsborough County Sheriff's Office*, 946 F.Supp. 962, 970-71 (M.D. Fla. 1996); *Florida City Police Dep't v. Corcoran*, 661 So.2d 409 (Fla. Dist. Ct. App. 1995).  The city police department is not a legal entity and has no legal existence separate and apart from the city. *Corcoran*, 661 So.2d at 410 (finding that the "Police Department . . . does not have the

capacity to sue and be sued"); *Eddy v. City of Miami*, 715 F.Supp. 1553, 1556 (S.D. Fla. 1989) ("[w]here a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit" absent some allegation of conduct attributable to the department itself). Plaintiff's complaint contains no allegations of conduct attributable to the Sarasota Police Department. Accordingly, the Sarasota Police Department is not a proper party in this litigation and must be dismissed.

Moreover, "[a] governmental entity is not liable under [§] 1983, merely as a matter of respondeat superior, for constitutional injuries inflicted by its employees." *See Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citation omitted).  A local government is, however, liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (holding that liability of municipalities and other governmental entities under § 1983 is limited to instances of official policy or custom). To attribute liability to the Sarasota Police Department or the City of Sarasota, Plaintiff must demonstrate that it had an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11ᵗʰ Cir. 1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  Here, Plaintiff fails to identify with specificity any policies, customs, or procedures instituted either by the Sarasota Police Department or City of Sarasota that led to his injuries.   Accordingly, the allegations in the complaint are

insufficient to support a § 1983 claim against those entities.

## 2. Claims against Lt. Stockton

Plaintiff alleges that Lt. Stockton violated his rights under the Fourth, Eighth, and Fourteenth Amendments "for his untruthful statements when 'adding his personal information' in the month of August, 2007; while conducting a recording telephone interview/investigation with the Plaintiff", and "while continuing to falsify information & denial of due process professionally with legal procedures." (Dkt. 1-2 at pp. 4-5). Plaintiff's complaint fails to assert sufficient factual allegations to state a claim against Defendant Stockton. Plaintiff asserts nothing more than conclusory allegations and legal conclusions. *See Jaharis*, 297 F.3d at 1187-88. Accordingly, Lt. Stockton is due to be dismissed from this action.

## 3. Claims against "John Doe" Defendants

In his complaint, Plaintiff has identified two "John Doe" defendants. Plaintiff identifies the first "John Doe" defendant as "Shift Supervisor/Captain" who is the "Supervisor of night shift" at the Sarasota Police Department (Dkt. 1 at p. 7). Plaintiff identifies the second "John Doe" defendant as "(unknown) Sergeant..." who is a "patrol officer" with the Sarasota Police Department (Id.). It appears Plaintiff alleges that the unknown Sergeant and the Shift Supervisor conspired with Defendants Forrister and Shellhammer to prepare a false use of force report and false traffic citation, and denied Plaintiff due process "in connection with the Plaintiff's medical & legal proceedings." (Dkt. 1-2 at pp. 2-5).

In civil rights actions, a complaint containing conclusory, vague, and general allegations of conspiracy will be dismissed as insufficient. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. l984); *Kearson v. Southern Bell Telephone & Telegraph Co.*, 763 F.2d 405, 407 (11th Cir. l985), *cert. denied*, 474 U.S. 1065 (1986). Complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts. *Dunn v. Gazzola*, 216 F.2d 709, 711 (1st Cir. 1954); *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977); *Fletcher v. Hook*, 446 F.2d l4 (3rd Cir. l971); *Johnson v. Stone*, 268 F.2d 803 (7th Cir. 1959); *Ellingburg v. King*, 490 F.2d 1270 (8th Cir. 1974); *Powell v. Jarvis*, 460 F.2d 55l (2d Cir. l972). Plaintiff has failed to plead facts supporting his vague claim that a conspiracy exists between Officers Shellhammer and Forrister and their superior officers, and the courts need not conjure up unpleaded facts to support these conclusory suggestions. *O'Brien v. Di Grazia*, 544 F.2d 543, 546 n. 3 (1st Cir. 1976).

To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied*, 500 U.S. 932 (1991)(citations omitted). Plaintiff has not shown that the parties communicated to reach an understanding to deny his constitutional rights. Therefore, Plaintiff's § 1983 conspiracy claim will be dismissed, and the "John Doe" defendants will be dismissed from this action.

**4. Claims against Defendants Forrister and Shellhammer**

a. Eighth Amendment claim

Plaintiff's complaint alleges that Defendants Forrister and Shellhammer used excessive force in violation of the Fourth and Eighth Amendments.  A claim of excessive force by a convicted prisoner is analyzed under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986).  However, claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment, not under a substantive due process approach. *Graham v. Connor*, 490 U.S., 386, 395 (1989).  Accordingly, because Plaintiff's complaint alleges that the officers used excessive force in the course of an arrest, stop, or other seizure, his claim will be analyzed under the Fourth Amendment, and his Eighth Amendment claim will be dismissed.

b. Fourth Amendment excessive force claim

Pursuant to the Fourth Amendment, a police officer must not use excessive force in the course of an arrest. *Graham*, 490 U.S. at 388, 394-95.  Similarly, a police officer with the ability to do so must intervene to stop another police officer's use of excessive force. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924-25 (11th Cir. 2000).

> Under a Fourth Amendment standard, the issue is whether the officer's conduct was objectively reasonable in light of the facts confronting the officer. *Graham*, 490 U.S. at 396-97. The use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, keeping in mind that the right to make an arrest carries with it the right to use some degree of physical force or the threat of force. This requires a careful balancing

of the nature and quality of the intrusion on the individual's Fourth
Amendment interests against the countervailing governmental interests at
stake. This in turn requires a court to evaluate the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety of the officers or
others, whether the suspect is actively resisting or attempting to flee, the need
for the application of force, the extent of the injury inflicted, and whether the
force used was reasonably proportionate to the need for the force. *See Beshers
v. Harrison*, 495 F.3d 1260, 1266-68 (11th Cir. 2007); *Vinyard*, 311 F.3d at 1347.

*Rosa v. City of Fort Myers, Rosa v. City of Fort Myers*, 2007 U.S. Dist. LEXIS 75978 at *35-
36 (M.D. Fla. Oct. 12, 2007).

Plaintiff contends that the officers used excessive force when Officer Forrister shot
him with the tazer gun after Plaintiff had fallen from the fence, injured his arm, and stood up
and shouted to Officer Forrister that he had hurt his arm.  Plaintiff admits that after Officer
Forrister jumped out of the police car, he tried to flee by running into the backyard of a
residence, and he tried to climb over a fence.  Officer Forrister then apparently threw his
flashlight which struck the fence, and Plaintiff then fell down and hurt his arm.  As he stood
up and shouted that he hurt his arm, Officer Forrister ran up to him and shot him in the lower
back with the tazer gun.  According to Plaintiff's complaint, the tazer gun did not emit a
shock to Plaintiff.

Courts must temper the excessive force inquiry with a "calculus of reasonableness
[which] must embody allowance for the fact that police officers are often forced to make
split-second judgments-- in circumstances that are tense, uncertain, and rapidly evolving--
about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at
396. Officer Forrister shot Plaintiff with a tazer gun (which apparently did not shock
Plaintiff) after Plaintiff had fled from Officer Forrister, and after Officer Forrister had to

chase Plaintiff through a residential area in the dark (Plaintiff alleges it was approximately

12:15 a.m.).  Plaintiff admits that although he tried to scale a fence and fell off the fence and

hurt his arm, he was not on the ground but standing when Officer Forrister shot him with the

tazer.  Plaintiff does not allege in his complaint that Officer Forrister used any further force

after he shot him with the tazer.  Under these "tense, uncertain, and rapidly evolving"

circumstances, it is reasonable for an officer to use a tazer gun on a fleeing suspect, even if

Plaintiff stood up and shouted to Officer Forrister that he had hurt his arm.

In addition, Plaintiff's complaint alleges that Officer Shellhammer ran onto the scene

after Officer Forrister shot Plaintiff with the tazer gun.  Plaintiff complaint, therefore, does

not allege any facts showing that Officer Shellhammer used excessive force, or that he had

the ability to intervene to stop Officer Forrister's use of force.

c. Fourth Amendment unreasonable seizure/false arrest claim

Plaintiff is essentially bringing a claim for unreasonable seizure and/or false arrest.

The Fourth Amendment guarantees that all individuals "will be secure in their person . . .

against unreasonable seizures." U.S. Const. amend. IV. A claim for false arrest falls within

the rights protected by the Fourth Amendment's guarantee against unreasonable seizure, and

allegations of such an arrest are cognizable under Section 1983. *See Ortega v. Christian*, 85

F.3d 1521, 1525 (11th Cir. 1996) ("A warrantless arrest without probable cause violates the

Fourth Amendment and forms a basis for a section 1983 claim.") (citation omitted). In

particular, federal case law has established that it is a violation of the Fourth Amendment for

an individual to be arrested without probable cause. *See Von Stein*, 904 F.2d at 578 (11th Cir.

1990) ("Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be arrested without probable cause.") (citation omitted).

Because Plaintiff's complaint alleges that Officers Forrister and Shellhammer stopped him and arrested him for "no reasonable purpose," and wrote a "bogus traffic citation" and a "falsified report" about the events on June 11, 2006, he has presented a viable claim or claims for unreasonable seizure and/or false arrest.

### Conclusion

For the foregoing reasons, the Sarasota Police Department, Lt. Stockton, and the two "John Doe" defendants will be dismissed from this action.  However, Plaintiff has stated a viable claim against Defendants Shellhammer and Forrister for unreasonable seizure and/or false arrest, and therefore, the claim will be allowed to proceed.

ACCORDINGLY, the Court **ORDERS** that:

1.      Plaintiff's claims are **DISMISSED** for failure to state a claim upon which relief may be granted, with the exception of Plaintiff's claim against Defendants Shellhammer and Forrister for unreasonable seizure and/or false arrest.

2.      Plaintiff must complete the enclosed forms:

> **A. Notice of Lawsuit and Request for Waiver of Service of Summons**
> Plaintiff shall complete blanks A-F on the Notice of Lawsuit and Request for Waiver of Service of Summons Form.  Plaintiff shall write the <u>NAME AND ADDRESS</u> of the Defendant to whom the notice is to be sent in Blank A. <u>THE FORM WILL BE RETURNED IF PLAINTIFF DOES NOT FILL IN THE ADDRESS IN BLANK A.</u> Plaintiff should write in "30" in Blank F. <u>PLAINTIFF MUST SIGN THE NOTICE OF</u>

<u>LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS FORM.</u>  Plaintiff <u>should not</u> fill in the date in the line that reads: "I affirm that this request is being sent to you on behalf of the plaintiff, this ____ day of_____."

### B. Waiver of Service of Summons

Plaintiff shall write his name in the top blank of the form. Plaintiff also shall complete the next four lines of the form: in the space marked "caption of action," Plaintiff should fill in the names of the parties as shown on the first page of this order (_ _ v. ____).  Plaintiff should <u>not</u> fill in the line marked "date request was sent" or any of the following lines on the form.

### C. Summons and Marshal's Forms (Form 285)

Plaintiff is required to fill in the name(s) and address(es) of Defendant(s) in the appropriate spaces on the summons and marshal's form. Plaintiff shall fill in "20" as the number of days allowed to answer. <u>PLAINTIFF MUST SIGN THE 285 FORM.</u>

Plaintiff must then mail the completed forms and a two copies of the complaint for defendants to the Clerk's Office. The completed forms and the copy of the complaint must be returned to the Clerk's Office within **TWENTY (20) DAYS**[1] of the date of this Order. Failure to return the completed forms and copy of the complaint within this time period will result in dismissal of the case for failure to prosecute, without further notice.  Plaintiff's failure to provide the Court with properly completed documents necessary to effect service will render the Court unable to meet its responsibility pursuant to 28 U.S.C. § 1915(d) regarding service of process.

---

[1]Plaintiff is cautioned that pursuant to Fed. R. Civ. P. 4(m), failure to perfect service within 120 days after the filing of the complaint without a showing of good cause for the delay may result in dismissal of the claims against the unserved defendant(s).

Page 14 of  15

3.      Plaintiff shall advise the Court of any change of address.  Failure to do so will result in the case being dismissed for failure to prosecute.

4.      The **Clerk of the Court** shall forward two sets of the Notice of Lawsuit and Request for Waiver of Service of Summons, Waiver of Service of Summons, and Summons and Marshal's Forms (Form 285) to Plaintiff.

**DONE** and **ORDERED** in Tampa, Florida on November 20, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc

Copy to: Plaintiff *pro se*